IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LORIE A. M.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00345-SH |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,**[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lorie A. M. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Commissioner's decision is AFFIRMED.

**I.    Disability Determination and Standard of Review**

Under the Act, an individual is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). These impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his or her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II.     Background and Procedural History

On March 23, 2018, Plaintiff applied for disability insurance benefits with a protective filing date of March 22, 2018. (R. 26, 168-69.) Plaintiff alleges she has been unable to work since September 13, 2017, due to major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), fibromyalgia, degenerative disc disease, and osteoarthritis. (R. 168, 197.) Plaintiff was 51 years old on the date of the ALJ's decision. (R. 36, 168.) She has a high school equivalent education, some college, and past work as a housing project manager, eligibility and occupancy interviewer, consultant, program manager, and property manager. (R. 49, 73-74.)

Plaintiff's claim for benefits was initially denied, (R. 79-94), and she requested a hearing (R. 104-05). ALJ Sandra Morales Price then conducted an administrative hearing and issued a decision on July 3, 2019, finding Plaintiff not disabled. (R. 26-36, 42-78.) The Appeals Council denied review on May 15, 2020 (R. 3-8), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Plaintiff filed this appeal on July 20, 2020 (ECF No. 2), within 65 days of that denial, 20 C.F.R. § 422.210(c).[2]

---

[2] This 65-day period is based on the regulation's presumption that the claimant received notice of the Appeals Council decision on the 5th day, after which the 60-day period of 42 U.S.C. § 405(g) begins to run. In this case, the post-receipt 60th day fell on a Sunday, July 19, 2020. Fed. R. Civ. P. 6(a) applies to computing any time period specified in a statute that does not specify a method for computing time. Under that rule, where the last day falls on a weekend or legal holiday, the period continues to run until the next regular weekday. Fed. R. Civ. P. 6(a)(1)(C). Therefore, Plaintiff's complaint was timely filed, if barely.

3

**III.    The ALJ's Decision**

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 13, 2017. (R. 28.) At step two, the ALJ found Plaintiff had the severe impairments of cervical spine degenerative disc disease, degenerative changes of the knees, fibromyalgia, depression, anxiety, and history of PTSD. (R. 28-29.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 29-30.)

The ALJ then determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; occasional reaching overhead but frequent reaching in any direction; and never climbing ladders/ropes/scaffolds. (R. 30.) As to environmental limitations, the ALJ found Plaintiff could occasionally be exposed to moving mechanical parts, humidity, wetness, vibration, and extreme cold and heat, and she could never work at unprotected heights. (*Id.*) As to psychologically based limitations, the ALJ found Plaintiff was limited to simple and routine tasks; could make simple work-related decisions; and could have occasional contact with the public, supervisors, and coworkers. (*Id.*) The ALJ provided a detailed analysis of the evidence that went into this finding. (R. 30-34.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to her past relevant work. (R. 34.) At step five, however, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including mail sorter, cleaner, and produce sorter. (R. 35.) The ALJ thus found Plaintiff was not disabled. (R. 36.)

IV.     **Issues**

Plaintiff asserts the ALJ erred by: (1) failing to properly evaluate the opinion of treating psychiatrist Dr. Ramesh Eluri (ECF No. 12 at 6-10), (2) failing to properly evaluate her subjective symptoms (*id*. at 12-15), and (3) relying on VE testimony in response to a hypothetical question that did not include all her limitations (*id*. at 10-11). The Court finds these contentions unpersuasive.

V.     **Analysis**

    A.     **The ALJ Properly Evaluated Dr. Eluri's Opinion.**

Plaintiff asserts the ALJ improperly rejected an opinion by Dr. Eluri that Plaintiff was unable to meet competitive standards in multiple mental abilities and would be absent from work more than four days per month. The ALJ determined that Dr. Eluri's opinion was unpersuasive because it was neither supported by his own treatment records nor consistent with evidence from other sources. Substantial evidence supports this finding, which applied the correct legal standard.

Plaintiff received inpatient mental healthcare at Pottstown Hospital from September 15, 2017, until September 20, 2017 (R. 335-75), after presenting to the emergency department and reporting a "nervous breakdown" due to issues with her job, as well as constant shaking, hopeless thoughts, and suicidal ideation with a plan. (R. 364.) She was stabilized with medication and showed tremendous improvement in mood and affect by the time of discharge. (R. 355.)

After her discharge, Dr. Eluri regularly treated Plaintiff for major depressive disorder, generalized anxiety disorder, and PTSD from September 21, 2017, through November 21, 2018. (R. 462-504, 592-613.) Plaintiff initially reported no improvement in her symptoms, but by December 2017, her depression and anxiety were better, while some anxiety persisted. (R. 467-86.) In January 2018, Plaintiff indicated she was doing "fairly well" and her medications were

helping her. (R. 487.) Thereafter, although there were times she felt worse related to specific events (job resignation, separation from husband), Plaintiff generally reported improved depression with persistent anxiety. (R. 491-504, 592-613.) Dr. Eluri's mental status examinations were consistently normal despite Plaintiff's depressed and/or anxious mood at the outset of treatment. (R. 462-504, 592-613.) He regularly noted Plaintiff was improved from previous visits, had intact memory, and had "good" attention and concentration. (R. 462-504, 592-601, 607-13.) At one appointment in July 2018, however, he did indicate Plaintiff had poor recent memory as well as variable attention and concentration. (R. 602-06.)

On April 24, 2018, Dr. Eluri completed a mental RFC questionnaire wherein he noted that although treatment improved Plaintiff's anxiety levels, they remained "quite high" and that she continued to "struggle significantly with daily functioning." (R. 507.) Dr. Eluri opined that Plaintiff was unable to meet competitive standards in 8 of the 16 mental abilities and aptitudes needed to perform unskilled work, including her ability to understand, remember, and carry out very short and simple instructions; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. (R. 509-10.) He further indicated Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. (R. 511.)

From August 24, 2018, until August 28, 2018, Plaintiff again received inpatient mental healthcare at Pottstown Hospital after she was found intoxicated on the floor of her home with an open bottle of pills next to her. (R. 764-78.) She was stabilized with medication and discharged with a brighter affect but depressed mood. (R. 776-78.)

In her written decision, the ALJ thoroughly summarized Dr. Eluri's opinion, noted he identified disabling limitations, and concluded that his opinion was not persuasive. (R. 33.) In

discussing the consistency and supportability of Dr. Eluri's opinion, the ALJ found: (i) his opinion was "far in excess" of the available record; (ii) Plaintiff had only one brief hospitalization; (iii) her psychological signs were generally intact during the period at issue; (iv) she improved with medication; and (v) her activities of daily living included socializing with family, driving alone, shopping, and preparing simple meals. (R. 33.) Notably, the ALJ found persuasive an opinion by the state agency psychologist that Plaintiff could perform 1-2 step tasks, yet the ALJ included additional concentration and social functioning limitations in the RFC assessment due to Plaintiff's depression, anxiety, and difficulty with others. (*Id*.)

Plaintiff contends that the ALJ erred in evaluating Dr. Eluri's opinion. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source[3] about what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four categories of abilities, including the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id*. § 404.1513(a)(2)(ii). If the record contains a medical source opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . . to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of all medical opinions and prior administrative medical findings by considering five factors: (1) supportability; (2) consistency;

---

[3] Acceptable medical sources include licensed physicians. 20 C.F.R. § 404.1502(a)(1).

(3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict an opinion or finding. *Id*. § 404.1520c(a) & (c). Supportability and consistency are the most important factors, and the ALJ must always explain how she considered those factors in the decision. *Id*. § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors, *id*., unless there are two or more medical opinions or prior administrative medical findings about the same issue that are equally well-supported and consistent with the record, but not identical, *id*. § 404.1520c(b)(3).

Plaintiff asserts that the reasons given by the ALJ for finding Dr. Eluri's opinion not persuasive are themselves not supported by substantial evidence. More specifically, Plaintiff asserts that the ALJ ignored one of Plaintiff's two hospitalizations and did not explain her finding that Plaintiff had "generally intact psychological signs." (ECF No. 12 at 6-7.) The Court finds no error in the ALJ's analysis of Dr. Eluri's opinion. Plaintiff correctly points out that the ALJ noted a single mental health hospitalization as part of her analysis of Dr. Eluri's opinion (R.33); however, the ALJ referenced both the September 2017 and August 2018 inpatient hospitalizations elsewhere in her opinion (R. 31-32). Thus, it is apparent to the Court that ALJ considered both hospitalizations and the reference to a single hospitalization was a typographical error. In any event, the ALJ did not reach her ultimate conclusion regarding Dr. Eluri's opinion solely on the basis of Plaintiff's inpatient treatment. Rather, the ALJ also found Dr. Eluri's opinion was inconsistent with and not supported by other evidence in the record, including his own treatment notes, the effectiveness of treatment, and Plaintiff's activities of daily living. (R. 33.) Accordingly, any error the ALJ made with respect to Plaintiff's inpatient treatment as it relates Dr. Eluri's opinion would be considered harmless. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166

(10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning . . . and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.")  Relatedly, because Dr. Eluri was the only psychiatrist in the record who consistently treated Plaintiff during the relevant period, it is clear the ALJ was referring to Dr. Eluri's normal mental status examinations when she found Plaintiff "had generally intact psychological signs during the period at issue."  In sum, the ALJ gave due consideration to Dr. Eluri's opinion and ensured that the Court could follow her reasoning.

Likewise, the Court rejects Plaintiff's assertion that the ALJ engaged in "picking and choosing" with respect to Dr. Eluri's opinion.  (ECF No. 12 at 7-8.)  An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue,* 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007)).  This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996).  Plaintiff claims the ALJ "ignored all of the evidence" that was favorable to Plaintiff.  (ECF No. 12 at 7.)  This is incorrect.  The ALJ did not simply "pick and choose" the evidence that was favorable to her position, but rather appropriately considered all the evidence, including Dr. Eluri's opinion as set forth above.  Plaintiff fails to identify any evidence that undermines the ALJ's conclusion that she could perform a limited range of light, unskilled work.

B.      **The ALJ's Consistency Analysis is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ erred in analyzing her symptoms, arguing the ALJ did not consider all the factors in 20 C.F.R. § 404.1529(c)(3), failed to link the consistency findings to the evidence in the record, and improperly relied on Plaintiff's daily activities.

The ALJ is required to consider Plaintiff's subjective complaints, or symptoms, in determining the RFC. 20 C.F.R. § 404.1529(a) & (d)(4); *see also* 20 C.F.R. § 404.1502(i) (defining "symptoms" as the claimant's "own description of [her] physical or mental impairment"). When evaluating a claimant's symptoms, the Commissioner uses at two-step process.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(b)-(c). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b); *see also* SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, at *3. Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside

---

[4] Tenth Circuit precedent has characterized this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all of the objective and subjective evidence, the claimant's symptom was, in fact disabling. *See Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), and referring to pain). The analysis under SSR 16-3 comports with this process. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The policy also no longer uses the term "credibility" to describe this analysis. SSR 16-3p. at *2.

10

from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p at *7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p at *10. Subjective symptom findings are "peculiarly the province of the finder of fact," and reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 31.) In reaching this conclusion, the ALJ noted several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (i) her pain management doctor's statements that medication allowed her to perform activities of daily living and provided adequate analgesia; (ii) the mild radiological evidence; (iii) the generally normal physical findings; (iv) the normal psychiatric evaluation performed by her primary care physician in September 2017; (v) Dr. Eluri's normal mental status examination in May 2018; (vi) the effectiveness of medication in treating her depression; (vii) the effectiveness of her two brief inpatient mental health hospitalizations; and (viii) her ability to go to the casino. (R. 31-32.)

11

Plaintiff asserts that the ALJ failed to consider all the factors in 20 C.F.R. § 404.1529(c)(3) and failed to link the consistency findings to the evidence in the record. (ECF No. 12 at 13-15.) However, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). As set forth above, the ALJ provided numerous reasons, consistent with and supported by the record, for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged. The ALJ thus linked her consistency findings to the evidence and provided clear and specific reasons for her determination in compliance with the directives of *Kepler* and its progeny, as well as SSR 16-3p.

Plaintiff further asserts that the ALJ improperly relied on certain daily activities to discount her symptoms (ECF No. 12 at 15), but the ALJ made no such finding in her consistency analysis.[5] The only reference to Plaintiff's "daily activities" in the ALJ's consistency analysis was the notation of a statement by Plaintiff's pain management doctor that medication allowed her to perform daily activities and provided adequate analgesia, which the ALJ found was inconsistent with the reported symptoms. (R. 31.) The Court finds the inconsistency between Plaintiff's own statements and her pain management physician's findings to be a legitimate basis for disbelieving the full extent of Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(4) ("[The ALJ] will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including . . . statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [her].").

---

[5] In discussing the persuasiveness of Dr. Eluri's opinion, the ALJ found his opinion was inconsistent with Plaintiff's activities of daily living. (R. 33.) Even if this issue had been raised as an alleged error in the ALJ's analysis of Dr. Eluri's opinion, it would be harmless for the reasons set forth in section V(A), *supra*.

### C. The ALJ Did Not Err in Analyzing the VE Testimony.

Finally, Plaintiff contends the ALJ erred by adopting VE testimony in response to a hypothetical question that corresponded to the RFC, rather than including additional limitations. (ECF No. 12 at 10-11.) At the administrative hearing, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three light, unskilled jobs a hypothetical person with the same age, work history, and education as Plaintiff could perform: mail sorter, cleaner, and produce sorter. (R. 75-76.) The ALJ then presented a hypothetical question that included the same exertional and nonexertional limitations as the previous question, with the additional limitation that such person would be absent from work two days per month. (R. 76.) The VE testified that the hypothetical person with such limitations would be precluded from employment. (R. 76-77.) For the reasons set forth above, the RFC crafted by the ALJ was supported by substantial evidence and was, therefore, proper. To the extent Plaintiff's arguments on the VE's testimony are based on the RFC, they similarly fail. *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (holding that the ALJ is not bound by a VE's opinion in response to a hypothetical question that includes impairments the ALJ has not accepted as true).

However, Plaintiff further asserts that the ALJ erred by failing to discuss the VE's testimony regarding limitations greater than those included in the RFC. (ECF No. 12 at 11.) This argument also fails. The ALJ is not required to exhaustively analyze VE testimony regarding limitations that the ALJ did not ultimately adopt. *See Clifton,* 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). To the contrary, hypothetical questions to the VE "must reflect with precision all of [the claimant's] impairments, but they need only reflect impairments and

limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996).

Accordingly, the Court finds no error in the ALJ's analysis of the VE's testimony, and such testimony constitutes substantial evidence supporting his decision. *See Qualls,* 206 F.3d at 1373 ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 30th day of August, 2021.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**